UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------x
                              :
UNITED STATES OF AMERICA,     :     Docket № 3:12-cr-00093-1 (VLB)
                              :
          v.                 :
                              :
DEAN DEPRETA,                :
                              :
           Defendant.  :
                              :     SEPTEMBER 19, 2013
-------------------------------------------------------x


**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.    INTRODUCTION**

       This Memorandum is respectfully submitted on behalf of Defendant Dean DePreta, to assist the Court in the important task of imposing a fair and appropriate sentence.  The Defendant pleaded guilty to Count One of the above-captioned Superseding Indictment, charging him with Conspiracy to engage in Racketeering in Corrupt Organizations ("RICO"), in violation of 18 U.S.C. § 1962(d).  He awaits sentencing.

       The offense to which the Defendant pleaded guilty is a serious violation of the law and it is not our intention to minimize or understate the gravity of his criminal conduct.  Rather, we hope to present the Court with context and perspective as well as mitigating factors of substantial importance to assist the Court in fashioning a sentence that is principled, proportionate, consistent with

the interests of justice and fairness and which satisfies the requirements of 18 U.S.C. § 3553(a).[1]

II.      THE PLEA AGREEMENT

The instant guilty plea is the product of negotiation resulting in a number of stipulations between the Government and the Defendant.  Of particular relevance is the parties' *dis*agreement concerning the calculation of the appropriate U.S. Sentencing Guidelines range.

In the original Plea Agreement (dated June 5, 2013) which was presented to the Court, the Defendant reserved the right to argue that his correct Criminal History Category ("CHC") is Category II.  The United States takes the position that the correct Criminal History Category is Category III and has reserved the right to seek a "horizontal" upward departure under U.S.S.G. § 4A1.3 based on its contention that even a Criminal History Category III understates the seriousness of the criminal history and is justified because the Defendant is likely to offend again.

In recent discussions with the Government, the Defendant has agreed not to pursue his claim that the correct Criminal History Category is CHC II.

---

[1]  **Title 18, United States Code, § 3553(a) provides in pertinent part as follows:**

> **"Factors to be considered in imposing a sentence.– The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."**

Respectfully, we hope to demonstrate to the Court that, even though it is within a CHC III, the sentence we propose recognizes the seriousness of the Defendant's unlawful conduct and will serve as a necessary specific deterrent of further criminal conduct by him as well as a general deterrent to others who require such disincentive.

We have tried to place the offense in context – not by way of defense or justification – but solely for the purpose of assisting the Court in seeing the Defendant's admitted conduct in an accurate and objective light.

III.   **THE DEFENDANT'S PERSONAL BACKGROUND**

   A.   <u>**Childhood & Early Years**</u>

The Presentence Report describes Mr. DePreta's upbringing in a typically detailed and accurate way.   (Presentence Report, dated 9/13/13, ["PSR"), ¶¶ 85-89)

The Defendant was born on April 19, 1968 in Stamford, Connecticut.  His parents are alive and remain married.  The Defendant is their only child. They live in an in-law suite at Defendant's home with his wife and three children.  Although the Defendant's father is in good health for his age, his mother, Mrs. Linda DePreta, was diagnosed with Stage Three ovarian cancer in December, 2012. Although she has endured radical surgery and her physicians have treated her with "aggressive" chemotherapy, the hope is that she will survive another four or five years.  She is currently 69 years old.

The Defendant's upbringing was similar in many respects to the positive family life he enjoys with his own wife and children: He was brought up surrounded by a close-knit nuclear and extended family which was always available to help one another when help was needed.

B.   **Marital and Personal Relationships**

The Defendant has been married to the same woman, Nicoletta ("Nicla"), for 17 years.  Together they have three children, two sons, Joseph, 15, and Dean Jr., 14, and a daughter, Michaela, 11.  Nicla is a part owner and operator of Westover Pizza, a restaurant in Stamford.  (PSR, ¶¶ 90-94)

In April, 2008, Nicla was diagnosed with "triple negative" breast cancer.[2] She, too, underwent surgery and chemotherapy and her medical condition is

---

[2] According to the National Breast Cancer Foundation, "[a] diagnosis of triple negative breast cancer means that the three most common types of receptors known to fuel most breast cancer growth - estrogen, progesterone, and the HER-2/neu gene - are not present in the cancer tumor.  This means that the breast cancer cells have tested negative for hormone epidermal growth factor receptor 2 (HER-2), estrogen receptors (ER), and progesterone receptors (PR). Since the tumor cells lack the necessary receptors, common treatments like hormone therapy and drugs that target estrogen, progesterone, and HER-2 are ineffective. Using chemotherapy to treat triple negative breast cancer is still an effective option. In fact, triple negative breast cancer may respond even better to chemotherapy in the earlier stages than many other forms of cancer."

It is a relatively rare form of breast cancer, occurring in only 15% of diagnosed cases.  The Foundation website states: "Triple negative breast cancer can be more aggressive and difficult to treat.  Also, the cancer is more likely to spread and recur."

*National Breast Cancer Foundation, Inc., http://www.nationalbreastcancer.org/triple-negative-breast-cancer* [last viewed on 9/6/13].

constantly monitored.  Her medical situation is complicated by the presence of two non-cancerous cysts.

The Defendant's and his wife's oldest son, Joseph, was seriously injured recently while playing baseball.  He suffered a partially detached retina and sustained a macular hole in his eye which results in a black spot in the center of his vision, surrounded by blurring.  Thus far, the boy has not undergone surgery to repair the macular hole and the hope remains that his vision will improve with time.  Otherwise the DePreta children are in good health and are successful academically.

As is to be expected, the children are "confused" and "hurt" by the Defendant's actions and arrest.  As he told Probation Officer Megan Chester, he has always shared a close relationship with his children, and has always been involved with their lives and activities.[3]  Although he told Probation Officer Chester that he initially did not want his children to see him in jail, he and his wife typically left the decision up to their children (with age-appropriate guidance and explanation).  Notwithstanding an understanding of his situation, they all chose to see him, despite him being in custody.

The Defendant's eldest son, Joseph, appears to have been the most profoundly impacted by the Defendant's situation among the children.  Although

---

[3]  These qualities are a repeated and prevalent theme in the many letters of support that are being submitted to the Court on the Defendant's behalf by his family, friends, associates and acquaintances.  They are more fully addressed below.  (Exhibit 1)

he is soldiering through with the help of his parents, he "looks ahead," and recognizes that his father "won't be there for graduation."  (Exhibit 1; *Letter of Joseph DePreta*)

C.   <u>Physical Condition</u> (PSR, ¶¶ 95-96)

The Defendant is in general good health – with some notable exceptions. He suffers from degenerative disc disease in his back and had back surgery two years ago. Although the surgery improved his condition, he continues to suffer nerve pain which "shoots down" his right leg.  Until his arrest in June, 2012, the Defendant was treated by Dr. Ghogawala Zohar, a neurologist in Greenwich, every few months for follow-up and repeated MRIs.  Additionally, he suffers from sleep apnea and has been advised that he should use a CPAP machine.[4]  He was initially prescribed this machine approximately ten years ago, and although he advised Probation Chester that he had been using it "on and off," his present condition requires its regular use and he uses it every night.[5]  The Defendant

---

[4]  The *National Heart Lung and Blood Institute* describes "CPAP," or continuous positive airway pressure, as a treatment that uses mild air pressure to keep the airways open.  CPAP typically is used by people who have breathing problems, such as sleep apnea.  CPAP is often the best treatment for obstructive sleep apnea.  Sleep apnea is a common disorder that causes pauses in breathing or shallow breaths while one sleeps.  As a result, not enough air reaches the lungs.  *National Heart Lung and Blood Institute,* http://www.nhlbi.nih.gov/health/health-topics/topics/cpap/ [last viewed on 9/9/13].

[5]  It is imperative that Defendant continue to have this device available to him during his incarceration.

underwent surgery to reshape his soft palate in an effort to resolve his sleep apnea, but it was not successful.

The Defendant also suffers from arthritis and bursitis in his left shoulder and underwent surgery approximately five years ago to "clean up" the scar tissue.  He continues to have some pain and limited range of movement in his shoulder.

> D.    **Mental and Emotional Health**

With the exception of the obvious and natural effect that his present situation has on him, the Defendant is philosophical and realistic.  As he told Probation Officer Chester, "My life revolves around my wife and kids."  He added that he has a "great relationship" with his wife, and stated "I take a lot of pride in that."  The Defendant is a self-effacing individual and does not view himself as "special."  (PSR, ¶ 98)

> E.    **Education and Vocational Skills**

The Defendant is high school educated.  (PSR, ¶ 99)

> F.    **Employment**

As noted in the PSR (¶¶ 100-102), at the time of his arrest, Mr. DePreta was employed full-time at the Westover Pizza restaurant in Stamford.  Before his arrest, he worked there every day for the five years since the restaurant opened.

> G.    **Financial Condition: Ability to Pay**

Net Worth and Monthly Cash Flow statements have been provided to the Probation Department.  Because of his detention since June, 2012, he has had no

income of his own.  His family subsists on his wife's income from her work in the

pizza restaurant and the limited assistance provided to the family by her in-laws

who live with her and the children.  (PSR, ¶¶ 103-106)

     As part of the negotiated plea agreement, the Defendant has stipulated to a

forfeiture of $300,000.  He agreed to make his best efforts to deposit a substantial

portion of what he owes prior to sentencing.  Although a sincere and diligent

effort has been made to obtain funds to make that payment, he and his family

have been unable to do so.

     H.    **Dean DePreta as a Human Being**

     The temptation is great in any sentencing memorandum to try to "sugar

coat" or "spin" the portrayal of the defendant in such a way as to humanize him

and make him more sympathetic and appealing on a personal level.  Of course,

the objective, if possible, is to educate the sentencing court about the

defendant's "other side" – the side that doesn't commit crimes – and de-

emphasize his "true" evil nature.  Candidly, in many cases, that effort requires, to

be euphemistic, "creativity" on the part of the defendant's lawyers.

     That is not the case with Dean DePreta.

     Without minimizing the fact that he did what he did (and admitted to doing

so), and that it was wrong and criminal, respectfully, it is important to remember

what Dean's crimes actually are – and what they are not.  Significantly, Dean's

criminal  conduct is reconcilable with the person who is described again and

again in the many letters of heartfelt support that have been submitted for the Court's consideration.

Dean is *not* accused of engaging in acts of violence.  He is *not* accused of being violent.  He was not a loanshark or an arsonist.  He was not assaultive or worse.  He was the manager and operator of an illegal gambling business – no more, no less.

The objective evidence gathered by the Government during the course of its investigation culminating in Dean's guilty plea does not portray him as the stereotypical "leg breaker" one expects to see in cliched movies and television programs.

Rather, he ran an illegal gambling business.

It is in this context that the many letters written to the Court take on a special significance.  (Exhibit 1)  They are consistent in their description and characterization of Dean.  He is universally regarded as an especially devoted husband, father and son – even in the face of very serious terminal illness.  He is consistently described as a patient and sensitive father, very engaged in his children's lives and always making an extra special effort to ensure that they are safe, healthy, happy, loved and – no small irony under the circumstances – honorable and honest.  He is a devoted cousin, nephew, in-law and friend to all.  Unlike too many of us, he does not avoid difficult situations with which others are trying to cope.  He seeks them out and embraces them.  He is always there – even to his own financial detriment – to help a friend, or provide necessary support to

a child who is not fortunate enough to get it from his or her own parents and family. He is sensitive to the needs of his community and looks forward to being an important and contributing part of it. He is a positive fixture and role model – publicly and privately. And he does so without material reward or recognition. He does so because he wants to help others.

Again, we hasten to remind the Court that we are not trying to "canonize" this man or asking the Court to engage in the willful blindness of ignoring his sins. When all is said and done, Dean DePreta is an admitted criminal. But he is not a "bad" or "evil" man in the sense we typically think of criminals. While it is objectively true that too much of Dean's "business" was against the law, it is also true that his misdeeds are not so objectively and relatively heinous as to make him incorrigible or unsalvageable.

Simply put, there is a lot of good to Dean DePreta – along with that which this Court needs to address to ensure that in the future the "good" eclipses that which is not good. Therefore, a measured and proportionate punishment is definitely called for.

We know that the Court will read the many letters that have been submitted on Dean's behalf. We ask that special attention be paid to the letters from his wife, Nicla, and their children. Whatever else he may be, Dean is a most "human" of beings.

Although he has behaved enormously foolishly, he is not a lost cause. The punishment we respectfully request will deny him and his family his involvement

in some of the most important and meaningful events in all their lives.  It is realistic that it will prevent him from ever seeing his mother again except from jail.  The punishment we recommend is a serious sentence.  However, it is "sufficient, but not greater than necessary" to serve all the interests of justice.

IV.    SENTENCING RECOMMENDATION

Sentencing, of course, remains the exclusive domain of the Court.  And by offering the following recommendation, we simply hope that the Court will agree that, given all the circumstances of Dean's case, and consistent with the instructions of 18 U.S.C. § 3553(a), the sentence we request will be viewed as proportionate, principled and appropriate.  The Defendant understands full well that what he did was wrong and that the Court is obligated to impose a meaningful sentence.  To this end, he hopes that Your Honor will recognize and agree that while any sentence of incarceration works a hardship on the family and is, necessarily, a punishment and deterrence to him, there is no principled necessity for the sentence to be unduly harsh in order to satisfy and fulfill the objectives of the sentencing guidelines and the spirit and intent of established federal sentencing objectives.

Dean takes full responsibility for being the leader and organizer of a 20 member gambling organization in southwestern Connecticut.  He admits that he engaged in this illegal activity with his co-defendants named in the Superseding Indictment.  Unfortunately, much of what the Government has posited to the Court focuses on "associations" with people other than those named in the

Superseding Indictment.  The Government makes its claims about Dean's associations gratuitously, without compelling proof and, we submit, for their inflammatory effect.  It consistently points to recorded statements that were *not* made by Dean, but, rather, by a deceased Government informant who obviously knew his conversations were being recorded and (to maximize the benefit to him) tailored them to provide as much help as he could to his Government handlers.

More importantly, the Government's misplaced focus is unnecessary. Under any analysis, Dean will receive a very serious sentence simply because of his leadership role in the criminal organization.  We respectfully submit that there is no need for this Court to consider any other supposed "associations" when fashioning an appropriate sentence and should not permit itself to be unduly influenced by hyperbole and overstatement.

In trying to craft a principled basis for a meaningful and credible sentencing recommendation, we originally considered recommending that the sentence be the product of a multiplier of the average of the other sentences imposed by this Court on the Defendant's co-defendants.  As the leader of the gambling organization and someone with a prior conviction for this conduct, we thought it appropriate that he receive a sentence that is more severe than the sentences given to the non-leader co-defendants.  To date, ten of the Defendant's co-defendants have been sentenced on their respective guilty pleas. The average

sentence for these ten co-defendants is 10 months.[6]  The longest sentence – 21 months – was imposed on Thomas Uva IV.

We considered suggesting that Dean DePreta's sentence be a multiple of the average co-defendant sentence of 10 months because, we thought, that would reflect the role played by Dean and signify his relative culpability in the gambling enterprise.

However, upon reflection, we rejected this analysis.  Frankly, we realized that it did not, as we originally thought, result in an appropriately severe sentence.

Instead, we respectfully suggest the following which we believe is more appropriate, albeit harsher:

We suggest that the Court take the longest sentence already imposed – the 21 month term of imprisonment imposed on Thomas Uva IV – and multiply it by 3, resulting in a sentence of 63 months.

Such a sentence would clearly recognize and reflect the leadership role played by the Defendant in the gambling operation as well as his relative culpability (*i.e., 300%* that of the next most culpable co-defendant) and send an

---

[6]  Michael Pepe received a sentence of 12 months.  Michael Vitti received a sentence of 10 months.  Daniel Degruttola received a sentence of Time Served after serving less than one day in jail.  Mitchell Engelson received a sentence of 15 months.  Anthony Santoro received a sentence of 8 months.  Thomas Uva IV received a sentence of 21 months.  John Liquori received a sentence of 18 months.  John Colello received a sentence of 6 months.  Frank Potolicchio received a sentence of 4 months.  Domenico Manchisi was sentenced to 6 months.  The average sentence given to these co-defendants is 10 months.

unmistakable message of deterrence.  We respectfully suggest that applying this rational and pragmatic analysis will result in an appropriately measured, albeit very serious, sentence.

## V.    CONCLUSION

Dean DePreta stands before the Court having pleaded guilty to a serious felony.  It is not his first offense.  However, he did not put the government to its proof that he was guilty, as was his right, however unsuccessful such an effort might have been.

While it is true that many defendants agree to plead guilty, they do so for different reasons. Some do so for the sakes of their families, whose interests are often considered by them too little and too late to avoid their pain.  Obviously, many are motivated by the hope for a lighter sentence.  Some are genuinely contrite and are attempting to recover the self respect they have squandered.

Frankly, this defendant, we sincerely believe – at this point – is motivated by all three – but especially the last.  His contrition may appear to have been slow in coming but it is real.

Recognizing that his case is a serious violation of the law, deserving of a serious, substantial, sentence, we respectfully asks the Court to sentence the Defendant in a way that reflects his proportionate culpability objectively.

Therefore, Defendant respectfully asks that this Court agree that the requested sentence, in the words of 18 U.S.C. § 3553(a) and the objectives of

ensuring proportionality in sentencing and avoiding disparity, is "sufficient, but not greater than necessary" to serve the interests of justice.


**RESPECTFULLY SUBMITTED,**
**DEAN DePRETA**
**THE DEFENDANT**


By: /s/ **Ethan Levin-Epstein**

**Ethan Levin-Epstein (Federal Bar No. ct01566)**
**Stephen J. Fitzgerald (Federal Bar No. ct22939)**
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
    FITZGERALD & PIRROTTI, P.C.
**405 Orange Street**
**New Haven, CT 06511**
**Tel:  (203) 777-4425**
**Fax: (203) 776-3965**
**E-mail:** elevin-epstein@garrisonlaw.com
        sfitzgerald@garrisonlaw.com

-15-

## CERTIFICATION

**THIS IS TO CERTIFY** that on the  19th  day of September, 2013, a true and accurate copy of the foregoing Defendant's Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

**Sent by email to:**

**Probation Officer Megan Chester
(megan_chester@ctp.uscourts.gov)**

**/s/  Ethan Levin-Epstein**

**Ethan Levin-Epstein (Federal Bar No. ct01566)
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
     FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT  06511
Phone:  (203) 777-4425
Fax:  (203) 776-3965
E-mail: elevin-epstein@garrisonlaw.com**

-16-